**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN DOE, | ) | |
| c/o Marshall and Forman LLC | ) | |
| 250 Civic Center Dr., Ste. 480 | ) | CASE NO. 2:18cv405 |
| Columbus, OH  43215, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | JUDGE |
| MATTRESS FIRM, INC., | ) | |
| c/o Statutory Agent | ) | |
| CT Corporation System | ) | |
| 4400 Easton Commons Way, Ste. 125 | ) | |
| Columbus, OH 43219 | ) | |
| | ) | MAGISTRATE JUDGE |
| -and- | ) | |
| | ) | |
| ONE SOURCE TECHNOLOGY, LLC, | ) | |
| *dba* ASURINT, | ) | |
| c/o Statutory Agent | ) | |
| Corporation Service Company | ) | |
| 50 W. Broad St., Ste. 1330 | ) | |
| Columbus, OH 43215 | ) | |
| | ) | **JURY DEMAND ENDORSED HEREON** |
| Defendants. | ) | |

**COMPLAINT**

**I.     Preliminary Statement**

1. Plaintiff John Doe brings this lawsuit against Defendants Mattress Firm, Inc. ("Mattress Firm") and One Source Technology, LLC, *dba* Asurint ("Asurint"), a consumer reporting agency, seeking actual, statutory, compensatory, and/or punitive damages and declaratory and injunctive relief for their violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and Mattress Firm's wrongful discharge of him in violation of Ohio's clear public policy that an expunged conviction should not be used by an employer in reaching

the decision to discharge an employee, which were committed when Mr. Doe, an at-will sales manager trainee with decades of sales experience and a history of one criminal conviction, a misdemeanor conviction sealed by an Ohio court under the expungement statute, R.C. 2953.31, *et seq.*, was fired after that sealed conviction appeared on an Asurint employment background report supplied to Mattress Firm because (1) Asurint failed to follow (a) strict procedures to ensure the information was complete and up-to-date – the expungement occurred more than a year before the information was gathered – or to notify Mr. Doe at the time it issued the report; and/or (b) reasonable procedures to assure maximum possible accuracy of the information; and (2) Mattress Firm failed to give Mr. Doe any time to respond to the report before discharging him or, at the time of his discharge, a copy of the report and a description of his FCRA rights.

**II.     Parties**

2.     Plaintiff John Doe, a resident of Columbus, Ohio, is age 52, has 30 years of sales experience, and is a natural person, an individual, and a "consumer" as defined by 15 U.S.C. §1681a(c).

3.     Mr. Doe files this suit under a pseudonym because, with his only conviction record being sealed, he wishes to keep his real name out of the public eye as it relates to his conviction record and thereby avoid the same adverse impact on his future employment prospects that he suffered at Mattress Firm.

4.     Defendant Mattress Firm, Inc. is a retailer incorporated in Delaware, with its principal place of business in Houston, Texas; conducts business in at least eight locations in the Central Ohio area, including several in Columbus, Ohio; has more than 3,500 company-operated and franchised stores across 49 states, giving it the largest geographic footprint in the United States among multi-brand mattress retailers; is the nation's leading specialty bedding retailer with approximately $3.5 billion in *pro forma* sales in 2015; was acquired in September 2016, by

Steinhoff International Holdings N.V. for $3.8 billion and now operates as a subsidiary of Steinhoff; and uses background information provided by Defendant Asurint in evaluating whether to hire or retain employees.

5. Defendant One Source Technology, LLC, does business under the Registered Trade Name Asurint; is incorporated in Delaware with its principal place of business in Cleveland, Ohio; provides an integrated system of background screening products and services, including criminal record checks, for public and private corporations, and government entities; and a consumer reporting agency under 15 U.S.C. §1681a(f) because it is regularly paid by employers to perform background checks on applicants and employees.

### III. Jurisdiction and Venue

6. Jurisdiction is invoked pursuant to 15 U.S.C. § 1681n-p and 28 U.S.C. §1367 (supplemental).

7. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Mr. Doe was employed by Mattress Firm in Columbus, Ohio when he was discharged as a direct result of Asurint's Background Check Report that contained a sealed conviction record and Mattress Firm refused to rescind that discharge upon learning that the conviction had been sealed.

### IV. Facts

8. Mr. Doe has a 2013 misdemeanor theft conviction that was sealed by the Franklin County, Ohio Common Pleas Court on October 27, 2016.

9. Mr. Doe's conviction resulted from his failure to pay the balance on a check that he cashed at a check-cashing establishment.

10. Promptly after the state court decision sealing Mr. Doe's criminal record, references to his theft conviction and all records of the prosecution were removed from all publicly-available records.

11. Although records of the prosecution and conviction are no longer publically available, they can still be viewed by the individual prosecuted if they travel to the court and demonstrate their identity.

12. Mr. Doe accessed his records and learned that an order of expungement was filed in his case on October 27, 2016.

13. In December of 2017, more than a year after the entry of expungement, Mattress Firm hired Mr. Doe for its Sales Manager in Training Program, an employment-at-will position.

14. This training program was to take place at a Mattress Firm location in Columbus, Ohio, and, upon its successful completion, Mr. Doe would be placed as a Sales Manager at a Mattress Firm store.

15. Mr. Doe's hiring was contingent on passing a background check.

16. Mattress Firm ordered a Background Check Report, Order ID: 29949869, from Asurint on December 11, 2017.

17. Although he had not yet completed his background check, Mr. Doe began to participate in the training program and was compensated by Mattress Firm at a rate of $13.68 per hour.

18. The standard practice for credit reporting agencies is to review publicly-available court records multiple times per year and again before reporting conviction information to employers.

19. On December 12, 2017, Defendant Asurint provided Mattress firm with a Background Check Report for Mr. Doe, Order ID: 29949669. A true and accurate copy of the Report is attached as Exhibit A.

20. The Background Check Report provided by Asurint listed Mr. Doe's 2013 theft conviction.

21. The Background Check Report provided by Asurint did not state that the 2013 theft conviction had been expunged.

22. The only negative information regarding Mr. Doe contained in the Background Check Report provided was the 2013 sealed theft conviction.

23. On December 28, 2017, Mattress Firm's Sales Manager in Training supervisor, Vaughn King, pulled Mr. Doe aside from the regular Thursday meeting of trainees and informed him that "something had come up" on the background check and that he had to fire Mr. Doe.

24. Mr. Doe then told Mr. King that nothing should have been on his background check and asked what it had shown.

25. Mr. King responded by telling Mr. Doe that he had called the background check company, Asurint, and had left a voice mail but had not heard back from them.

26. Mr. Doe then told Mr. King that there was nothing on his record but that there had been an expungement.

27. Referring to Asurint, Mr. King then said, "Okay, let me call them again and you can talk to them."

28. Mr. King then dialed Asurint and handed Mr. Doe the phone.

29. The phone call was answered by a voice mail system, and Mr. Doe left a message asking to be called back at his personal phone number.

30. Mr. King repeated that he needed to let Mr. Doe go, and he could call him with any questions or concerns.

31. Mr. Doe left Mattress Firm's place of business.

32. At no time during or before Mr. Doe's firing did Mattress Firm notify him that an adverse action against him was being considered based on the results of his background check.

33. At no point did Mattress Firm provide Mr. Doe a summary of his rights under the Fair Credit Reporting Act.

34. At no point did Mattress Firm provide Mr. Doe with a copy of the report it had received from Asurint.

35. At no point did Mattress Firm inform Mr. Doe that he could dispute the report.

36. Mattress Firm never gave Mr. Doe a specific and reasonable amount of time to initiate the dispute.

37. Following his termination, Mr. Doe suspected that the background check had reported his 2013 misdemeanor theft conviction.

38. After leaving the Mattress Firm store, Mr. Doe immediately went to the Franklin County Clerk of Courts and confirmed that his conviction had in fact been expunged.

39. Later that day, Mr. Doe received a phone call from a representative of Asurint and was told that Asurint could not tell him what was on his background check over the phone, but that it could email the report to him.

40. Mr. Doe requested that the report be emailed to him.

41. Shortly thereafter, Mr. Doe received a copy of the background check via email and saw that it listed the expunged 2013 theft conviction.

42. Mr. Doe called Mr. King at Mattress Firm and left him a voicemail, explaining that the conviction on the background check had been sealed.

43. Mr. King did not respond to the message. Because of this, Mr. Doe called Mr. King two additional times and left messages for him.

44. The next day, Mr. Doe went to the Franklin County Prosecutor's office and spoke to the duty attorney who verified that his 2013 theft conviction had been expunged on October 27, 2016.

45. The duty attorney then made a call to Asurint and spoke to an Asurint representative, informing the representative that Mr. Doe's conviction had been expunged.

46. The Asurint representative told the duty attorney that it would correct the error and issue a new background check to Mr. Doe's employer.

47. The duty attorney then made two phone calls to Mr. King at Mattress Firm.

48. On at least one of these phone calls, the duty attorney left a voicemail stating that Mr. Doe's conviction had been expunged and asking if there was any way that his termination could not be finalized until the issue was worked out with the background check company.

49. Mr. King did not respond.

50. Mr. Doe's employment with Mattress Firm was terminated because Asurint reported an expunged conviction.

51. The Background Check Report issued by Asurint is a consumer report pursuant to 15 U.S.C. §1681a(d)(1) because it is a written communication bearing on Mr. Doe's personal characteristics from a credit reporting agency, Asurint, that was furnished to an employer, Mattress Firm, for employment purposes.

52. Pursuant to 15 U.S.C. §1681k, a consumer reporting agency which furnishes a report for employment purposes must either notify the consumer when it issues a report containing adverse public records information or maintain strict procedures designed to ensure that the information it reports is complete and up-to-date.

53. Asurint knew that the information it was securing for its report to Mattress concerned the employment of Mr. Doe.

54. Asurint neither notified Mr. Doe when it issued its report reflecting his conviction nor provided him the name and address of the person to whom it reported that information.

55. Asurint knew that a report reflecting Mr. Doe's conviction was adverse and would likely have an adverse effect on his ability to obtain or retain employment.

56. Asurint willfully failed to maintain strict procedures designed to ensure that the information it reports is complete and up-to-date.

57. Asurint knew or should have known that its procedures failed to account for expungements of convictions.

58. Asurint knew that expungements of convictions rendered them improper to include in an employment background investigation report.

59. Asurint could readily have maintained strict procedures designed to account for expungements of convictions.

60. Asurint chose to maintain procedures that lowered the cost, shortened the time, and simplified its employment background investigation report rather than maintain stricter procedures that were more expensive, took longer, and required greater skill than its procedures.

61. The public record status of Mr. Doe's conviction at the time Asurint reported it to Mattress was sealed and reflected expungement.

62. Pursuant to 15 U.S.C. § 1681e(b), a consumer reporting agency must follow reasonable procedures to assure maximum possible accuracy of the information concerning an individual about whom it prepares a consumer report.

63. Had Asurint followed reasonable procedures, it would have discovered that Mr. Doe's conviction had been expunged and sealed for more than a year.

64. Pursuant to Ohio Revised Code §2953.32(C)(2), when a record is sealed, the proceedings pertaining to that conviction shall be considered not to have occurred.

65. Asurint willfully and intentionally represented to Mattress Firm that Mr. Doe had a conviction for theft in the State of Ohio when in fact he did not.

66. Alternatively, Asurint failed to follow reasonable procedures which would have shown that Mr. Doe's conviction had been sealed more than a year before and negligently represented to Mattress Firm that he had a conviction for theft in the State of Ohio when in fact he did not.

67. By reporting the record that was sealed more than one year prior to the report date, Asurint violated 15 U.S.C. §1681e(b) by failing to follow reasonable procedures designed to assure maximum possible accuracy of the reported information.

68. Pursuant to 15 U.S.C. §1681b(b)(3)(A)(i-ii), within a reasonable time before taking any adverse action based in whole or in part on the report Mattress Firm had the duty to provide to Mr. Doe a copy of the report and a description in writing of his rights.

69. Had Mattress Firm provided a copy of the report to Mr. Doe before deciding to discharge him, he would have had the opportunity to dispute the report with Asurint and secure a clean background report that would have removed the contingency from his hiring.

70. Pursuant to Ohio Revised Code § 2953.33(A), expungement or sealing restores the individual who had been convicted to all rights and privileges.

71. Pursuant to Ohio Revised Code § 2953.33(B)(1), in an employment application an applicant may be questioned only with respect to convictions not sealed unless the question bears a direct and substantial relationship to the position for which the applicant is being considered.

72. Mattress Firm did not restrict Asurint's background check to convictions of Mr. Doe that had a direct and substantial relationship to the Sales Manager position.

73. Asurint did not confine its background check to convictions of Mr. Doe that had a direct and substantial relationship to the Sales Manager position.

74. The contingency Mattress Firm imposed on Mr. Doe's hiring was passing a background check.

75. Had Asurint's procedures disclosed the expungement of Mr. Doe's conviction, it would have submitted to Mattress Firm a clean background check.

76. But for Asurint's inclusion of Mr. Doe's sealed theft conviction in its background report, he would have retained his position as a Trainee and, in light of his initial success in the training program and past sales experience, successfully completed the training program and become a Sales Manager.

77. Had Mattress Firm inquired about Mr. Doe's conviction, it would have learned that the check-cashing establishment used criminal charges as leverage to collect amounts from customers.

78. Had Mattress Firm inquired about Mr. Doe's conviction, it would have learned that it did not bear a direct and substantial relationship to the positions of Sales Manager Trainee or Sales Manager.

79. Pursuant to Ohio Revised Code § 2953.32(C)(1)(c), when a court seals a person's criminal conviction record, the court determines that he has been rehabilitated to the satisfaction of the court.

80. By enacting R.C. 2953.31, *et seq.*, the Ohio General Assembly created a clear public policy that a person with a sealed criminal record has regained the character of one who never committed the sealed offense.

81. Using a sealed criminal record as the reason for discharging an at-will employee violates that clear Ohio public policy.

82. Discharging at-will employees because they have a sealed criminal record jeopardizes that clear Ohio public policy.

83. Mattress Firm forced Mr. Doe to abandon a career opportunity even though under that clear Ohio policy the sealing of his criminal record should have preserved the career opportunity.

84. R.C. 2953.31, *et seq.*, does not provide a private cause of action for at-will employees who have suffered a wrongful discharge based on a sealed conviction, and at-will employees who have been terminated in a way that jeopardizes Ohio's clear public policy lack any right to bring a civil action for such discharge, to seek recourse for the harm caused by such discharge, including loss of pay and job, tainting an employment record, and emotional distress, or to secure punitive damages to deter employers from jeopardizing that public policy.

85. Mattress Firm lacked any overriding business justification for discharging Mr. Doe because it could have used its training program to measure his abilities and character and its supervision of his job performance as a Sales Manager to ensure competent performance of his job duties.

86. Mattress Firm's violation of Ohio's public policy was committed in reckless disregard of Mr. Doe's rights.

87. The messages left on Mr. King's voicemail at Mattress Express by both Mr. Doe and the duty attorney at the Prosecutor's office notified Mattress Firm that his conviction had been expunged.

88. Despite this notice, Mattress Firm failed to rescind Mr. Doe's termination in violation of the clear public policy of the State of Ohio.

89. As a direct and proximate result of the FCRA violations by Mattress Firm and Asurint and the wrongful discharge by Mattress Firm, Mr. Doe has suffered actual damages, including without limitation: loss of employment, damage to reputation, embarrassment, humiliation, and other emotional distress.

90. Mr. Doe's termination resulted in a significant loss of income and opportunity, and the foreseeable repercussions included verbal threats of eviction and tardy payment of child support, car insurance premiums, and other bills.

91. Despite the exercise of reasonable diligence, Mr. Doe has been unable to secure employment and a career opportunity comparable to his position at Mattress Firm.

V. **Claims for Relief**

    A. **First Claim: 15 U.S.C. §1681e(b) [Asurint]**

92. Mr. Doe hereby incorporates each and every allegation of paragraphs 1-91 as if fully rewritten herein.

93. By willfully and/or negligently failing to take reasonable procedures to assure maximum possible accuracy of the information it reported to Mattress Firm about Mr. Doe, Asurint violated 15 U.S.C. §1681e(b).

B.  **Second Claim: 15 U.S.C. §1681k [Asurint]**

94. Mr. Doe hereby incorporates each and every allegation of paragraphs 1-91 as if fully rewritten herein.

95. By willfully and/or negligently failing to use strict procedures designed to insure that the reported information on Mr. Doe was complete and up-to-date, Asurint violated 15 U.S.C. §1681k(a)

C.  **Third Claim: 15 U.S.C. §1681b [Mattress Firm]**

96. Mr. Doe hereby incorporates each and every allegation of paragraphs 1-91 as if fully rewritten herein.

97. By willfully and/or negligently failing to provide Mr. Doe a reasonable time before his firing a copy of the background report on which his firing rested and a description of his rights as the subject of an employment background check, Mattress Firm has violated 15 U.S.C. §1681b(b)(3)(A)(i) and 15 U.S.C. §1681b(b)(3)(A)(ii).

D.  **Fourth Claim: Wrongful Discharge [Mattress Firm]**

98. Mr. Doe hereby incorporates each and every allegation of paragraphs 1-91 as if fully rewritten herein.

99. By terminating Mr. Doe for a conviction it knew or should have known had been expunged and for an offense from which an Ohio Court had determined he had been rehabilitated, Mattress Firm committed a wrongful discharge in violation of the clear Ohio public policy against using sealed conviction records in employment decisions.

**VI.  Prayer for Relief**

WHEREFORE, Mr. Doe is entitled to and prays for the following relief:

     A.     declarations that Mattress Firm and Asurint violated the FCRA and Mattress Firm wrongfully discharged him;

     B.     equitable relief of reinstatement to Mattress Firm with expungement of his personnel file;

     C.     wages, salary, employment benefits, and other compensation denied or lost to him because of the FCRA violations and the wrongful discharge;

     D.     prejudgment and post-judgment interest:

     E.     other actual, statutory, and/or punitive damages;

     F.     costs and attorneys' fees; and

     G.     such other relief as the Court deems fair and equitable.

Respectfully submitted,

By: */s/ Edward R. Forman*
Edward R. Forman (0076651)
*(eforman@marshallforman.com)*
John S. Marshall (0015160)
*(jmarshall@marshallforman.com)*
Samuel M. Schlein (0092194)
*(sschlein@marshallforman.com)*
Helen M. Robinson (0097070)
*(hrobinson@marshallforman.com)*
MARSHALL AND FORMAN LLC
250 Civic Center Dr., Suite 480
Columbus, Ohio 43215-5296
(614) 463-9790
Fax (614) 463-9780

*Attorneys for Plaintiff*

**OF COUNSEL:**
Louis A. Jacobs (002101)
(*LAJOhio@aol.com*)
177 19th St., Apt. 9C
Oakland, CA 94612
(614) 203-1255
Fax (510) 250-9007

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a jury trial by a jury of eight (8) persons.

By:*/s/ Edward R. Forman*
Edward R. Forman (0076651)